UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SUNRISE ACADEMY, *et al.*, | ) | |
| Petitioners, | ) | |
| v. | ) | Misc. No. 11-0172 |
| UNITED STATES OF AMERICA | ) | |
| Respondent. | ) | |

OPINION

Sunrise Academy and Core Ventures, LLC (together, "petitioners") initiated this legal action in an attempt to gain possession of approximately $2 million seized by the United States as part of the ongoing criminal prosecution of Charles Emor, the founder of Sunrise. The petitioners have filed a Motion for Return of Seized Property, claiming that they are the legal owners of the seized funds and that the funds are not subject to criminal forfeiture. For its part, the United States objects that the petitioners are barred by statute from contesting the forfeitability of the seized assets at this time. Upon review of the parties' arguments, the relevant legal authorities, and the record in both this case and the related criminal case, the Court concludes that the petitioners' motion is premature. Consequently, the petitioners' motion will be denied without prejudice, and this miscellaneous action will be dismissed.

I. BACKGROUND

The criminal indictment of Charles Ike Emor alleges as follows: Mr. Emor founded Sunrise Academy ("Sunrise") in 1999 as a tax-exempt, non-profit organization. United

States v. Charles Ike Emor, Crim. No. 10-0298, Indictment ¶¶ 1-2 (D.D.C. Nov. 3, 2010) ("Emor Indict."). Mr. Emor served as the president and executive director of Sunrise and "maintained complete control over Sunrise financial affairs." Id. ¶¶ 1, 26. Organized as a private school providing special education services to male students between the ages of 7 and 22, Sunrise entered into contracts with the District of Columbia to enroll as students varying numbers of District of Columbia residents who were entitled under federal law to receive special education services but could not obtain those services in the District's public schools. See id. ¶¶ 2, 5-9. Between 2005 and 2009, Sunrise was paid more than $30 million under its contracts with the District. Id. ¶ 15. Some of Sunrise's funding derived from the federal Medicaid program, which reimbursed Sunrise for counseling services that the school claimed to have provided to students who were Medicaid beneficiaries. See id. ¶ 11.

According to the indictment, Sunrise, under the direction of Mr. Emor, repeatedly misrepresented the number of students who were attending the school under its contracts with the District of Columbia, with the result that Sunrise received payment for services that were never actually rendered to any student. Emor Indict. ¶¶ 27-29. Furthermore, large amounts of District of Columbia and/or federal funds that were paid to Sunrise were not used to provide special education services, but were instead diverted into bank accounts held by an entity called Core Ventures, LLC ("Core"). Id. ¶ 35. To facilitate this diversion of funds, Mr. Emor, another employee of Sunrise, and Mr. Emor's adult son, who served on Sunrise's board of directors, purported to authorize a loan of more than $2 million to Core by Sunrise. Id. ¶ 36. The "loaned" money was ostensibly to be used to operate a coffee shop that would be staffed by Sunrise students. Id.

The indictment alleges that the money transferred from Sunrise to Core was never used or intended to be used for any legitimate business purpose, but instead was diverted for the personal use of Mr. Emor. Emor Indict. ¶ 35. Mr. Emor organized Core as a for-profit corporation in 2008 and was the sole owner and officer of the company. Id. ¶ 18. Mr. Emor used Sunrise funds transferred to Core for a variety of personal transactions, including for the purchase of "luxury watches, gold cuff links, diamond bracelets, real properties, residential furniture, exercise equipment, electronics, arcade video games, [and] luxury vehicles." Id. ¶ 27; see also id. ¶ 51. He structured various financial transactions to conceal his diversion and personal use of funds from Sunrise. See id. ¶¶ 38-44.

Based on these alleged activities, Mr. Emor has been indicted on 10 counts of mail fraud, 13 counts of wire fraud, 2 counts of interstate transportation of stolen property, 1 count of theft from a program receiving federal funds, 9 counts of money laundering, 1 count of first-degree theft, and 1 count of first-degree fraud. See Emor Indict. ¶¶ 54-72. The indictment also alleges that certain property of Mr. Emor is subject to forfeiture. Id. at 31-34. Among the property allegedly subject to forfeiture to the United States is more than $2 million seized by the government from bank accounts maintained by Core. See id. at 31, 33.

The indictment against Mr. Emor was returned on November 3, 2010. On March 31, 2011, Sunrise and Core filed this miscellaneous action and the pending motion for return of the funds seized from Core's bank accounts.[1] Sunrise contends in the petitioners' papers that Core is Sunrise's "wholly-owned affiliate," Motion for Return of Seized Property ("Mot.") at 1, and both petitioners assert that the allegations contained in the indictment against Mr. Emor are

---

[1] It is unclear who currently controls Sunrise and/or Core, and so it is not clear who has authorized counsel for either entity to file this action and seek the relief requested.

"meritless." Id. at 2. The petitioners further argue that since the allegations of wrongdoing by Mr. Emor lack merit, the seized funds are not subject to forfeiture and so should be released by the government. Id. at 2-3.[2]

## II. DISCUSSION

Before the Court may address the merits of the petitioners' attacks on the allegations against Mr. Emor, it must determine as an initial matter whether the relief requested by the petitioners is available at this time and in this procedural posture. The government seeks forfeiture of the seized assets in question as part of its criminal prosecution of Mr. Emor. See Emor Indict. at 31-34. Criminal forfeiture proceedings are governed by 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure. See FED. R. CRIM. P. 32.2 advisory committee note (2000 adoption) ("Rule 32.2 consolidates a number of procedural rules governing the forfeiture of assets in a criminal case."). Under the scheme established by the statute and the Rule, the government may, as it has here, obtain a warrant for the seizure of property if a court "determines that there is probable cause to believe that the property to be seized would, in the event of conviction [of the defendant in the associated criminal prosecution], be subject to

---

[2] Several weeks after the submission of their motion for the return of seized property, the petitioners moved for leave to file a supplemental memorandum in which they argued that the seized property should be released because the affidavit submitted by the government in support of its application for a seizure warrant was false or misleading. See Supplemental Memorandum in Support of Motion for Return of Seized Property at 2-5. The Court granted the petitioners' motion for leave to file the supplemental memorandum. The Court has also granted the government's motion to file a supplemental opposition to petitioners' supplemental memorandum. The Court finds that petitioners' supplemental filing merely makes additional attacks on the substance of the government's indictment of Mr. Emor. For the reasons set forth in this Opinion, such attacks by the petitioners are not properly before the Court and will not be given further consideration at this time.

forfeiture and that an order [to prevent disposal or dissipation of the property] may not be sufficient to assure the availability of the property for forfeiture." 21 U.S.C. § 853(f).

Thus, to seize property allegedly subject to forfeiture, the United States need only show, in a non-adversary setting, that there is probable cause to believe that the property is forfeitable and in danger of dissipation. Once that showing has been made, neither Section 853 nor Rule 32.2 provides for any further inquiry into the property's forfeitability until the defendant in an associated criminal proceeding is found or pleads guilty "on any count in [the] indictment or information regarding which criminal forfeiture is sought." FED. R. CRIM. P. 32.2(b)(1)(A). At that point in the proceedings, either the court or the jury must determine, based on the evidence presented at trial and/or any additional evidence presented with respect to the forfeiture issue, "whether the government has established the requisite nexus between the property and the offense committed by the defendant." FED. R. CRIM. P. 32.2.(b)(1)(A), (b)(5)(B). If the finder of fact decides that the government has met its burden, then the court must enter "a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." FED. R. CRIM. P. 32.2(b)(2)(A). "The Court must enter the order without regard to any third party's interest in the property." Id.

After the entry of the preliminary forfeiture order, the court may conduct an "ancillary proceeding" to adjudicate the claims of any third-party — *i.e.*, any party other than the criminal defendant or the United States — who asserts an interest in the property to be forfeited. FED. R. CRIM. P. 32.2(c)(1); see 21 U.S.C. § 853(n). Those claims are determined by the court after an adversarial hearing at which the third-party claimant "may testify and present evidence

and witnesses on his own behalf, and cross-examine witnesses. . . ." 21 U.S.C. § 853(n)(5).  The ancillary proceeding "does not involve relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited property." FED. R. CRIM. P. 32.2 advisory committee note (2000 adoption).

As the foregoing description of the statutory scheme governing criminal forfeiture suggests, Congress envisioned that any third-party claims to property seized by the government and alleged to be forfeitable would be adjudicated only after the conviction of the defendant in the associated criminal proceeding.  Indeed, third parties are explicitly barred by Section 853 from presenting their claims in any other manner:

> Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may —
>
> (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or
>
> (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

21 U.S.C. § 853(k).  Similarly, Rule 32.2 provides that "[d]etermining whether a third party has [any interest in property subject to forfeiture] must be deferred until any third party files a claim in an ancillary proceeding" held after the entry of a preliminary forfeiture order in the criminal case.  FED. R. CRIM. P. 32.2(b)(2)(A).

These provisions would seem to definitively establish that third parties are forbidden by statute from doing exactly what the petitioners attempt to do here: challenging the forfeitability of property prior to a trial or plea in the related criminal case.  The petitioners

protest, however, that there is no statutory bar to their motion because (1) Rule 41(g) of the Federal Rules of Criminal Procedure authorizes the relief they request, see Mot. at 16-17, and (2) Section 853(k) bars intervention only in the "trial or appeal of a criminal case," not the *pretrial* phase of such a proceeding. Id. at 19-21.

    Neither of these arguments is persuasive. Pursuant to Rule 41(g), "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return . . . ." FED. R. CRIM. P. 41(g). This general pronouncement, however, must give way to Rule 32.2(b)(2)(A)'s specific requirement that adjudication of any third-party claims to property be deferred until after the entry of a preliminary forfeiture order. See Gozlon-Peretz v. United States, 498 U.S. 394, 407 (1991) ("A specific provision controls over one of more general application." (citing Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987)).

    As for the petitioners' argument that Section 853(k) forbids intervention into criminal trials but not criminal pretrial proceedings, this strained reading of the statute makes little sense. See United States v. Rogers, Crim. No. 09-0441, 2010 WL 1872855, at *5 (N.D. Ga. Apr. 12, 2010) (dismissing this interpretation of the statute as "read[ing] § 853(k)(1) too literally"). Pretrial proceedings are preliminary preparations leading to trial; it is difficult to discern why a third party would be permitted to inject itself into those proceedings but not the trial itself. Furthermore, the petitioners' reading of the statute conflicts with Rule 32.2, which quite clearly prohibits adjudication of third-party claims at *any* point prior to the entry of a preliminary forfeiture order. See FED. R. CRIM. P. 32.2(b)(2)(A).

The statutory scheme governing criminal forfeiture proceedings thus affords third-party claimants only one avenue for asserting their interests in property allgedly subject to forfeiture: an ancillary proceeding held *after* the entry of a preliminary order of forfeiture in the criminal case. See Libretti v. United States, 516 U.S. 29, 44 (1995) ("Congress has determined that § 853(n) . . . provides the means by which third-party rights must be vindicated."); United States v. Cone, 627 F.3d 1356, 1358 (11th Cir. 2010) ("Section 853 affirmatively bars interference [in a criminal case involving a forfeiture component] by non-party petitioners outside of the ancillary proceeding described in Section 853(n) and in Federal Rule of Criminal Procedure 32.2(c)."); United States v. Cox, 575 F.3d 352, 358 (4th Cir. 2009) ("Third parties claiming an interest in the property have no right to intervene in the criminal proceeding . . . before the entry of a preliminary order of forfeiture."); accord De Almeida v. United States, 459 F.3d 377, 381 (2d Cir. 2006); United States v. Puig, 419 F.3d 700, 703 (8th Cir. 2005); United States v. Nava, 404 F.3d 1119, 1125 (9th Cir. 2005). The petitioners protest, however, that "due process considerations require the Court to entertain" their motion for the return of property. Mot. at 21. While the petitioners without question are entitled to a hearing to adjudicate their interest in the seized assets, they have failed to demonstrate that due process requires such a hearing to be held in advance of Mr. Emor's criminal trial.

The scheme established by 21 U.S.C. § 853 and Rule 32.2 provides for a post-deprivation hearing for third-party claimants, but, as has already been discussed, allows that hearing to be held only after the conclusion of the criminal trial or the entry of a plea of guilty by the defendant, and after the entry of a preliminary order of forfeiture. See 21 U.S.C. § 853(n); FED. R. CRIM. P. 32.2(b)(2)(A). The ancillary proceeding to which third-party claimants are

entitled under that scheme is extensive; both claimants and the government may present evidence and witnesses, who are subject to cross-examination. See 21 U.S.C. § 853(n)(5). Discovery is also permitted. See FED. R. CRIM. P. 32.2(c)(1)(B). Such a means of adjudicating the interests of third-parties in forfeitable property has been found constitutionally adequate by other courts. See, e.g., United States v. Holy Land Found. for Relief & Dev., 493 F.3d 469, 477-78 (5th Cir. 2007) (*en banc*); United States v. McHan, 345 F.3d 262, 270 (4th Cir. 2003). Indeed, the petitioners here do not contend that the format of the ancillary proceeding fails to comply with the requirements of due process. Instead, the petitioners complain that the ancillary proceeding comes too late, and that they have a right under the Due Process Clause to an "early opportunity" — in the form of a pretrial evidentiary hearing — to challenge the seizure of the assets in question. Mot. at 21, 24.

To determine the process that is constitutionally due to the petitioners, the Court turns to the three-part balancing test first announced in Mathews v. Eldridge, 424 U.S. 319 (1976). See United States v. E-Gold, Ltd., 521 F.3d 411, 417 (D.C. Cir. 2008) (applying the Mathews test to determine whether due process requires a pretrial evidentiary hearing regarding the forfeitability of assets needed by a criminal defendant to obtain counsel of his choice). That test involves a weighing of the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. at 335. The weighing of those factors is distinctive in this case because the Court's task here is not so much to determine *what* process is due, but rather *when*. Since the petitioners are entitled by statute to an evidentiary hearing, which will follow any criminal conviction of Mr. Emor in short order, see 21 U.S.C. § 853(n)(4), the additional pretrial process they request would, at best, result in the release of their property some time sooner than would otherwise be the case.[3]

       The United States Court of Appeals for the District of Columbia Circuit has thus far recognized only one interest so weighty that it justifies a pretrial evidentiary hearing and determination regarding assets allegedly subject to criminal forfeiture: a criminal defendant's Sixth Amendment right to counsel. See United States v. E-Gold, Ltd., 521 F.3d at 417-18, 421. Where a criminal defendant submits evidence that he must rely exclusively on assets seized from him to pay for counsel of his choice, due process requires that the accused be afforded a pretrial opportunity to challenge the seizure. See id. A criminal defendant's interest in obtaining counsel of his choice is, for obvious reasons, of supreme importance. See United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006) (classifying the right to counsel of choice as a "structural" element of the "'framework within which the trial proceeds'"). It is also time-sensitive. In order for the defendant's counsel of choice to be effective, s/he must participate in pretrial and trial proceedings; the loss of the right to counsel of choice becomes "effectively . . . permanent" once the trial has concluded. United States v. E-Gold, Ltd., 521 F.3d at 418.

---

       [3]    Mr. Emor's trial is scheduled to begin in August 2011, so the post-trial ancillary proceeding to which petitioners are entitled would likely take place in October or November 2011.

10

The petitioners' interest in unfettered use of the assets allegedly belonging to them during the months preceding Mr. Emor's trial is obviously far less pressing than the right of an accused to counsel of his or her choice. The petitioners contend that they have an immediate need to use the seized assets "to pay the cost of Mr. Emor's defense and to fund [Sunrise's] charitable obligations." Reply at 3. These conclusory allegations carry little weight. Mr. Emor's right to counsel is personal and can be asserted by him alone; Sunrise has no Sixth Amendment right which is threatened by the government's continued restraint of the assets in question, and it has made no attempt to demonstrate that it has standing to assert Mr. Emor's rights on his behalf. See Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp., 28 F.3d 1268, 1281 (D.C. Cir. 1994) (explaining the requirements of third-party standing doctrine). Furthermore, the petitioners have given the Court no reason to believe that either Sunrise or Core will be significantly damaged if adjudication of their claims is postponed pending a post-trial ancillary proceeding. Obviously, if the petitioners had an additional $2 million in their possession, they would be able to cover more business expenses. See Reply Brief of Sunrise Academy and Core Ventures, LLC ("Reply") at 2 (claiming that "Core lacks funds to proceed with [its] effort" to open a coffee shop that would be run by "former [Sunrise] students"). But there is no reason to believe that an additional delay of a few months in the adjudication of the petitioners' claims will affect the viability of either organization; indeed, there is no evidence whatsoever before the Court regarding the near-term financial obligations of either Core or Sunrise.

The petitioners' interest in the early release of the seized funds thus does not weigh significantly in favor of a pretrial hearing. The same is true of the second Mathews factor,

"the risk of an erroneous deprivation of [petitioners'] interest . . . , and the probable value of procedural alternatives." United States v. E-Gold, Ltd., 521 F.3d at 418.  Because the assets in question have been seized on the basis of a probable cause finding reached in a nonadversarial context by a magistrate judge, there is some risk that the seizure may ultimately be proven erroneous.  See id. ("The inherent risk in allowing the deprivation of a property interest through *ex parte* proceedings accounts for the general rule that a prior adversary hearing is required, absent special circumstances." (internal quotation marks and citation omitted)).  But an erroneous deprivation will be detected either by the Court or a jury at or immediately after the criminal trial in an adversary proceeding leading, if the government prevails, to issuance of a preliminary order of forfeiture, and the petitioners' interest in the property then can be litigated at the post-trial ancillary proceeding.  The only added benefit of a pretrial hearing would be an earlier, but preliminary, determination.  And again, unlike a criminal defendant who stands to lose the right to meaningful choice of counsel, the petitioners do not appear to run the risk of a comparably significant injury if they are forced to wait a few months for the result of an ancillary proceeding.

Finally, the government's interest in avoiding additional pretrial process initiated by third parties is strong.  Mr. Emor has a constitutional right to a speedy criminal trial, one that would be endangered if third-party claimants to seized property were generally permitted to demand the adjudication of their property interests before the government could turn its attention to prosecuting a criminal trial.  Furthermore, as the Seventh Circuit has pointed out, Congress identified the relevant governmental interests in drafting 21 U.S.C. § 853.  See United States v. Moya-Gomez, 860 F.2d 706, 729 (7th Cir. 1988).  Explaining why that statute does not provide

12

for a pretrial, post-seizure hearing on the validity of any forfeiture allegations contained in an indictment, the relevant Senate Report states:

> [Such a hearing] would require the government to prove the merits of the underlying criminal case and forfeiture counts and put on its witnesses well in advance of trial. . . . [Such] requirements m[ight] make pursuing a restraining order [or seizure warrant] inadvisable from the prosecutor's point of view because of the potential for damaging premature disclosure of the government's case and trial strategy. . . .

S. Rep. No 98-225, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3378-78 (quoted in United States v. Moya-Gomez, 860 F.2d at 729); accord United States v. Kaley, 579 F.3d 1246, 1257 (11th Cir. 2009) (a pretrial challenge to indictment's forfeiture allegations "would require the Government to preview its case").

While these governmental interests are outweighed by a criminal defendant's interest in obtaining the counsel of his or her choice, see United States v. E-Gold, Ltd., 521 F.3d at 419, the result is not the same when those governmental interests are weighed only against petitioners' interest in gaining access to seized funds a few months earlier than would otherwise be the case. In those circumstances, the interests of the government, the public, and the criminal defendant in a fair and orderly trial on the merits of the criminal indictment must take precedence over the petitioners' desire for earlier adjudication of their claims. See United States v. Lazarenko, 476 F.3d 642, 651 (9th Cir. 2007) (third-party claimants' due process rights were not violated where delay between seizure of assets and post-trial ancillary proceeding was not "unreasonable"); United States v. McHan, 345 F.3d at 269-70 (Due Process Clause is not offended by statutory scheme limiting participation of third-party claimants in criminal forfeiture proceedings to post-trial ancillary proceeding). This conclusion, of course, is based on the

premise that Mr. Emor's trial will take place soon; a lengthy postponement of that trial might possibly alter the calculus. For that reason, the Court's dismissal of the petition submitted by Sunrise and Core will be without prejudice.

An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   June 17, 2011